**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 26-196-DLB**

**CARLOS ALBERTO LOPEZ-CRUZ**                                  **PETITIONER**

**v.**                        **MEMORANDUM ORDER**

**MARC FIELDS, et al.**                                        **RESPONDENTS**

\* \* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Petitioner Carlos Alberto Lopez-Cruz's Motion

to Enforce Judgment (Doc. # 8).  The Federal Respondents[1] have filed a Response in

Opposition (Doc. # 10), Lopez-Cruz has filed a Reply (Doc. # 11), and this matter is ripe

for the Court's review.  For the following reasons, Lopez-Cruz's Motion (Doc. # 8) is

**granted in part**.

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

The Court previously set forth the relevant factual background in its May 20, 2026

Order.  (Doc. # 5 at 1-2).  The following factual summary is provided as necessary to

adjudicate Lopez-Cruz's Motion to Enforce Judgment (Doc. # 8).

Lopez-Cruz is a native and citizen of Honduras who entered the United States as

a minor in February of 2019.  (Doc. # 1 ¶ 40).  On February 14, 2019, Lopez-Cruz, along

with his family, presented himself to Customs and Border Patrol Officials ("CBP") at the

---

[1]    Lopez-Cruz has named as respondents Tammy Marich, Chicago Field Office Director, Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations; Todd Lyons, Director, ICE; Markwayne Mullin, Secretary, Department of Homeland Security ("DHS"); Todd Blanche, Acting United States Attorney General (collectively "the Federal Respondents"); and Marc Fields, Warden, Kenton County Jail.  Respondent Fields did not respond to Lopez-Cruz's Motion to Enforce.

1

Tecate Port of Entry in Tecate, California. (*Id.* ¶ 41). Ultimately, Lopez-Cruz and his family were released into the United States on their own recognizance pursuant to 8 U.S.C. § 1226(a). (*Id.* ¶ 42). Since his release, Petitioner has resided in the United States continuously. (*Id.* ¶ 43).

On March 12, 2026, a Wabash County, Indiana Sheriff deputy arrested Lopez-Cruz for driving without a license. (*Id.* ¶ 48). Although Lopez-Cruz's family paid the bond related to this offense, ICE lodged a detainer, so Lopez-Cruz was transferred to ICE custody on March 15, 2026. (*Id.* ¶ 49). Subsequently, Lopez-Cruz was moved to the Kenton County Detention Center in Covington, Kentucky. (*Id.* ¶ 54).

On May 1, 2026, Lopez-Cruz filed a Petition for Writ of Habeas Corpus, arguing that his detention violated the Immigration and Nationality Act ("INA") and his right to due process under the Fifth Amendment. (*Id.* ¶¶ 9-11). Specifically, Lopez-Cruz argued that Respondents erroneously detained him pursuant to the mandatory detention scheme established by 8 U.S.C. § 1225(b) when, in fact, his detention was governed by § 1226(a), which permits release on bond. (*Id.* ¶ 4). On May 20, 2026, the Court granted Lopez-Cruz's Petition and ordered Respondents to immediately release him or, alternatively, provide him with "a constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence under 8 U.S.C. § 1226(a) within seven (7) days[.]" (Doc. # 5 at 7). On May 22, 2026, Lopez-Cruz appeared for a hearing before Immigration Judge ("IJ") Kelly Johnson. (Doc. # 6-1 at 1). Ultimately, the IJ determined that DHS "met its burden of proof by clear and convincing evidence by establishing that [Lopez-Cruz] is a danger, and in the alternative a flight risk." (*Id.*). As a result, he denied Lopez-Cruz's request for bond. (*Id.* at 2).

2

On June 29, 2026, Lopez-Cruz filed the instant Motion to Enforce (Doc. # 8).  In his Motion, Lopez-Cruz contends that Respondents failed to comply with the Court's Order to immediately release Lopez-Cruz or, alternatively, afford him a constitutionally adequate bond hearing.  (*Id.* at 1).  Lopez-Cruz states that "less than twenty-four hours after the Court granted habeas relief, Petitioner was rushed into a bond hearing without advance notice to him or to either of his retained immigration attorneys, before counsel had any meaningful opportunity to enter an appearance, submit supporting evidence, or prepare for the hearing."[2]  (*Id.*).  And, Lopez-Cruz continues, although he told the IJ that he had an attorney, the IJ noted that there was "no attorney on file," and proceeded to conduct the bond hearing.  (Doc. # 6-1 ¶¶ 4-7).  Further, Lopez-Cruz states that because his retained counsel was unable to make an appearance before the hearing, they have been unable to access an audio recording of the hearing, which prevents him from making an informed challenge to the denial.  (Doc. # 8 at 6).  In light of this Motion, the Court directed Respondents to file a response within fourteen days.  (Doc. # 9).  The Federal Respondents filed their Response on July 20, 2026 (Doc. # 10) and Lopez-Cruz filed a Reply on July 30, 2026 (Doc. # 11).  Accordingly, this matter is ripe for the Court's review.

## II.    ANALYSIS

The Federal Respondents do not dispute the facts alleged by Lopez-Cruz in his Motion to Enforce or his Affidavit in support thereof.  However, they argue that the Motion should be denied because the IJ applied the correct burden to DHS and concluded that bond was inappropriate.  (Doc. # 10 at 3).  The Federal Respondents also note that Lopez-Cruz chose not to appeal the IJ's decision to the Board of Immigration Appeals.

---

[2]    Along with his Motion, Lopez-Cruz has submitted a Telephonic Affidavit by which he attests to these facts.  (Doc. # 8-1).

3

(*Id.* at 3 n.1).  As a result, the Federal Respondents claim that he has failed to exhaust his administrative remedies, which bars this Court's review.  (*Id.*).  And to the extent that Lopez-Cruz simply disagrees with the IJ's discretionary decision, the Federal Respondents insist that 8 U.S.C. § 1226(e) precludes judicial review.  (*Id.* at 3).  The Court will address each argument in turn.

### A.    8 U.S.C. § 1226(e)

The Federal Respondents contend that, whatever Lopez-Cruz's quibbles with the IJ's decision, "8 U.S.C. § 1226(e) bars judicial review of the Immigration Judge's discretionary decisions."  (*Id.* at 3).  The Federal Respondents highlight Lopez-Cruz's claim that the IJ deemed him a danger "because he did not have a driver's license."  (*Id.* at 4 (quoting Doc. # 8 at 3)).  This, they argue, presents a mere disagreement with the IJ's discretionary weighing of the evidence—precisely the kind of claim § 1226(e) excludes.  (*Id.*).

8 U.S.C. § 1226(e) provides that

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).  Accordingly, "district courts do not have jurisdiction to review discretionary decisions made by an IJ regarding bond." *Fuentes v. Lyons*, No. 5:25-cv-153, 2025 WL 3022478, at *3 (S.D. Tx. Oct. 29, 2025) (citing *Nielsen v. Preap*, 586 U.S. 392, 401 (2019)).  So, where a petitioner challenges a particular discretionary "action" taken by an IJ—as opposed to the statutory framework as a whole—§ 1226(e) precludes the federal courts' review. *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018); *see also Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 279 (3d. Cir. 2018) ("Because

[the petitioner] does not challenge a particular action or decision, but rather 'the statutory framework that permits his detention without bail,' § 1226(e) does not deprive the District Court or this Court of jurisdiction[.]" (quoting *Demore v. Kim*, 538 U.S. 510, 517 (2003) (cleaned up))).  Still, the Supreme Court has emphasized that "this limitation applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases.  It does not block lawsuits over 'the extent of the Government's detention authority under the "statutory framework" as a whole.'" *Nielsen*, 586 U.S. at 401 (quoting *Jennings*, 583 U.S. at 295-96 (2018)).  Indeed, § 1226(e) permits the Court to "review whether the bond hearing itself satisfied the Fifth Amendment's guarantee of procedural due process." *De Leon Trejo v. Bullock*, No. 26-5186, 2026 WL 2057094, at *2 (6th Cir. May 14, 2026) (citing *Demore*, 538 U.S. at 517).  Thus, to the extent that Lopez-Cruz asks the Court to revisit the IJ's conclusion that he posed a flight risk or a danger, § 1226(e) precludes his claims.

Here, Lopez-Cruz emphatically states that he "is not seeking review of an exercise of bond discretion."  (Doc. # 11 at 3).  He insists that he "does not ask this Court to decide whether Petitioner is dangerous, whether he is a flight risk, whether the evidence supports a particular bond amount, or whether the Immigration Judge correctly weighed the evidence." (*Id.*).  Instead, Lopez-Cruz's Motion to Enforce asks the Court "to determine whether Respondents satisfied the express conditions" of this Court's May 20, 2026 Order (Doc. # 5).  (Doc. # 11 at 3).  Namely, Lopez-Cruz's Motion requires the Court to consider whether the Federal Respondents provided a "constitutionally adequate" bond hearing under the circumstances. (*Id.* at 5). Lopez-Cruz argues that the bond hearing he received did not comport with due process because, *inter alia*, he received no advance notice of

5

the hearing and the IJ proceeded with the hearing after Lopez-Cruz stated that he had retained counsel.  (Doc. # 8 at 4-7).  Section 1226(e) does not preclude judicial review of such claims.

### B.    Exhaustion

Federal Respondents also argue that the Court should impose a prudential exhaustion requirement.  (Doc. # 10 at 3 n.1).  Lopez-Cruz counters that this argument "conflates an ordinary administrative challenge to a bond determination with enforcement of a federal judgment."  (Doc. # 11 at 10).

At the outset, it is doubtful that any exhaustion requirement applies in the context of a motion to enforce a district court's order granting habeas relief.  *See Gill v. Mullin*, No. 4:26-cv-523, 2026 WL 1215055, at *1 n.3 (N.D. Ohio May 4, 2026) ("Since the challenge raised in Petitioner's motion [to enforce] is to Respondents' compliance with this Court's Order, exhaustion is not required.").  And the cases cited by the Federal Respondents do not persuade the Court otherwise.  First, in *Torrealba v. U.S. Dep't of Homeland Sec.*, a district court required a noncitizen detainee to exhaust her remedies with the Board of Immigration Appeals ("BIA") prior to seeking a writ of habeas corpus in federal court.  No. 1:25-cv-1621, 2025 WL 2444114, at *8-10 (N.D. Ohio Aug. 25, 2025).  Here, Lopez-Cruz has already obtained relief.  His Motion to Enforce concerns the Federal Respondents' compliance with the conditions of the Court's Order, not the propriety of habeas relief generally.  Second, the Federal Respondents cite *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011).  Unlike *Torrealba*, in *Leonardo*, the Ninth Circuit did consider whether to require prudential exhaustion in the context of a motion analogous to Lopez-Cruz's Motion to Enforce.  *Id.* at 1159.  However, the Ninth Circuit

6

acknowledged that a district court has "authority to review compliance with its earlier order conditionally granting habeas relief." *Id.* at 1161 (citing *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006)). But, because the district court in *Leonardo* concluded that the government had complied exactly with its order it construed the petitioner's motion to enforce as raising new arguments outside the ambit of the earlier order. *Id.* And the Ninth Circuit affirmed that those new claims were subject to an exhaustion requirement. *Id.* Here, for reasons discussed *infra*, the Court finds that the Federal Respondents *did not* comply with the Court's Order requiring a constitutionally adequate bond hearing.

However, even if an exhaustion requirement could apply to Lopez-Cruz's Motion, the Court concludes that prudential exhaustion should not be required here. The exhaustion doctrine serves an important purpose. It allows agencies to exercise their "'special expertise in interpreting relevant statutes' and promotes judicial efficiency." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir. 1987)); *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 418 (2023) (noting that "exhaustion promotes efficiency, including by encouraging parties to resolve their disputes without litigation") (citations omitted). Exhaustion requirements generally come in three kinds. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019). First, statutory text can impose an exhaustion requirement. *Id.* (citing *Sims v. Apfel*, 530 U.S. 103, 107 (2000)). Second, a given statute may permit an administrative agency to adopt regulations imposing an exhaustion requirement. *Id.* at 747. Finally, where "neither statute nor regulation says anything about exhaustion," a court may nonetheless impose an implied, or "prudential"

exhaustion requirement in harmony with the statutory scheme. *Id.* (citing *Sims*, 530 U.S. at 108-110).

Where, as here, an ICE detainee raises a constitutional due process challenge in connection with a bond hearing, "there is no applicable statute or rule that mandates administrative exhaustion[.]" *Soto-Medina v. Lynch*, 817 F. Supp. 3d 612, 619 (W.D. Mich. Jan. 21, 2026); *see also Bartolon v. Bondi*, 813 F. Supp. 3d 811, 823 (S.D. Ohio 2025) (noting that no statute or regulation requires administrative exhaustion where an ICE detainee objects to a bond denial under § 1226). So, if Lopez-Cruz must exhaust his remedies before bringing the claims in his Petition, it is due to the applicability of prudential exhaustion. Although the Sixth Circuit has yet to prescribe a standard for determining whether prudential exhaustion applies to a given case, courts within this Circuit have followed the test established by the Ninth Circuit.[3] *See, e.g.*, *Bartolon*, 813 F. Supp. 3d at 824; *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. Aug. 29, 2025); *Orellana v. Noem*, 807 F. Supp. 3d 745, 749 (W.D. Ky. 2025). Under the Ninth Circuit's test, a court may require prudential exhaustion when:

> (1)    Agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2)    Relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3)    Administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

---

[3]    The Sixth Circuit has previously cited the Ninth Circuit's test in the context of challenges to bond determinations made by IJs. *Bartolon*, 813 F. Supp. 3d at 824 (citing *Rabi v. Sessions*, No. 18-3249, U.S. App. LEXIS 19661, at *1 (6th Cir. July 16, 2018) (citation omitted)). However, this reference came in a brief, unpublished order.

*Soto-Medina*, 817 F. Supp. 3d at 619-20 (quoting *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citations omitted)).

This test counsels against the imposition of a prudential exhaustion requirement in Lopez-Cruz's case. None of the three factors suggest that requiring Lopez-Cruz to proceed through the BIA's administrative review framework would protect the BIA's authority or promote judicial efficiency. *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."). Regarding the first factor, Lopez-Cruz asserts a purely legal claim. (Doc. # 8 at 4-7). He argues that the Federal Respondents violated his right to due process by failing to apply the proper burden of proof, failing to provide advance notice of his bond hearing, and proceeding with the hearing in the absence of Lopez-Cruz's retained counsel. (*Id.*). Resolution of these claims poses a question of constitutional interpretation that does not require a developed record from the BIA. *See Soto-Medina*, 2026 WL 161002, at *3; *Gu v. Noem*, No. 3:26-cv-36, 2026 WL 621356, at *6 (N.D. Ohio Mar. 5, 2026). Second, due process challenges emanating from immigration proceedings "generally do[] not require exhaustion" because "the BIA lacks authority to review constitutional challenges[.]" *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Because the BIA lacks authority to review constitutional challenges, declining to require exhaustion in this case would not encourage individuals with constitutional claims to bypass the BIA's administrative process. *See Lopez-Campos*, 797 F. Supp. 3d at 778 (declining to require prudential exhaustion). The third and final factor falls in Lopez-Cruz's favor for similar reasons. Because the BIA lacks the authority to address constitutional challenges, administrative

review will not resolve Lopez-Cruz's claims and avoid the need for judicial review. *Singh*, 2026 WL 962003, at *3 (finding that prudential exhaustion was inappropriate because "the BIA cannot review []constitutional challenges") (citing *Sterkaj*, 439 F.3d at 279).

Under the test consistently applied by courts in the Sixth Circuit, prudential exhaustion is inappropriate in this case. Thus, the Court declines the Federal Respondents' invitation and turns to Lopez-Cruz's substantive argument.

## C.    Constitutional Adequacy

In its May 20, 2026 Order, the Court directed the Federal Respondents to provide Lopez-Cruz with a "constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence under 8 U.S.C. § 1226(a)[.]" (Doc. # 5 at 7). Lopez-Cruz has moved for enforcement of this Order because, in his estimation, he did not receive a "constitutionally adequate bond hearing." Specifically, Lopez-Cruz argues that the hearing he received was inadequate because it occurred without the presence of Lopez-Cruz's retained counsel.[4]

---

[4]    In his Motion, Lopez-Cruz also claims that the IJ failed to properly allocate the burden of proof in accordance with the Court's Order and that the hearing occurred without sufficient notice. (Doc. # 8 at 5-6). Lopez-Cruz alleges that he never "heard the phrase 'clear and convincing evidence'" during the hearing. (Doc. # 8-1 ¶ 9). And Lopez-Cruz initially claimed that he did not possess an audio recording of the bond hearing or a copy of the written decision. (Doc. # 8 at 6). However, in their Response, the Federal Respondents point out that a copy of IJ Johnson's decision was filed along with their May 29, 2026 Status Report. (*See* Doc. # 6-1). In the written decision, IJ Johnson explicitly concludes that "the Department of Homeland Security met its burden of proof by clear and convincing evidence by establishing that [Lopez-Cruz] is a danger, and in the alternative a flight risk." (*Id.* at 1). In his Reply, Lopez-Cruz acknowledges that he has access to the IJ's written decision which, on its face, states that the IJ applied the appropriate burden of proof. (Doc. # 11 at 8-9). Nonetheless, Lopez-Cruz argues that the written decision does not establish that he received advance notice, that his retained counsel had the opportunity to appear, that he knowingly waived the ability to have his counsel present, or that he had an opportunity to submit evidence. (*Id.* at 9). Additionally, Lopez-Cruz argues that the IJ "order's recitation of the burden" does not establish that this burden was actually enforced. (*Id.* at 8). Because the Court finds that the bond hearing was constitutionally inadequate for other reasons, the Court need not reach the questions of what burden of proof was applied at the bond hearing or whether Lopez-Cruz received sufficient notice.

In the Affidavit attached to his Motion, Lopez-Cruz asserts that he "was told about the hearing only when a jail officer came to take him to the courtroom." (Doc. # 8-1 ¶ 2). Relatedly, Lopez-Cruz asserts that he was not permitted to have his retained attorney present at the hearing. (Doc. # 8 at 5). Lopez-Cruz maintains that he had retained an immigration attorney at the time of his hearing. (*Id.*). However, because there was no notice of this hearing, his attorney had no opportunity to enter an appearance before the bond hearing. (*Id.*). When Lopez-Cruz appeared for his hearing, IJ Johnson asked if he had counsel. (*Id.*). Lopez-Cruz replied that he did. (*Id.*). However, IJ Johnson stated that there was "no attorney on file" and proceeded with the bond hearing. (*Id.*). Although the Federal Respondents note that Lopez-Cruz "provides only his own account of the bond hearing," and cites his own Affidavit, they do not refute these allegations. (Doc. # 10 at 4).

The Court "retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010). Here, the Court ordered the Federal Respondents to provide Lopez-Cruz with a "constitutionally adequate bond hearing." (Doc. # 5 at 7). Accordingly, to the extent that Lopez-Cruz has not received such a hearing, the Court retains jurisdiction. *See, e.g., Gill*, 2026 WL 1215055, at *1 (granting in part a motion to enforce a prior order granting a petition for a writ of habeas corpus). In his Motion to Enforce, Lopez-Cruz asserts that the Federal Respondents did not provide him with a constitutionally adequate bond hearing. (Doc. # 8 at 4-5). Specifically, he argues that he was deprived of his right to due process under the Fifth Amendment when the Federal Respondents failed to provide notice of the hearing and

11

refused to allow Lopez-Cruz's retained counsel to participate. (*Id.* at 4-5 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976))).

As the Court noted in its May 20, 2026 Order, "[t]he Fifth Amendment provides, in pertinent part, that no person shall be 'deprived of life, liberty, or property, without due process of law[.]'" (Doc. # 5 at 3 (quoting U.S. CONST. amend. V)). The right to procedural due process includes notice and an opportunity to be heard. *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026)

Although there no Sixth Amendment right to counsel in civil immigration proceedings, *see Mendoza-Garcia v. Barr*, 918 F.3d 498, 503 (6th Cir. 2019) (citations omitted), "[n]oncitizens in removal proceedings have long been protected by the Fifth Amendment's guarantee of due process of law." *Id.* at 503 (citing *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903)). This guarantee includes the right of a noncitizen "to make his case before the immigration authorities" and the right to "hire counsel" to do so. *Id.* at 504 (quoting *Al-Saka v. Sessions*, 904 F.3d 427, 434 (6th Cir. 2018). For this reason, the Sixth Circuit has recognized that "a noncitizen in removal proceedings has a due process right to be represented by retained counsel." *Id.* Additionally, noncitizens have a "statutory right to counsel" under the Immigration and Nationality Act ("INA"). *Id.* at 505 (citing *Ibarra-Reina v. Lynch*, 651 F. App'x 427, 431 (6th Cir. 2016)). 8 U.S.C. § 1362 provides that "[i]n any removal proceedings before an immigration judge . . . the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose."

Here, Lopez-Cruz contends that the IJ's decision to proceed with the bond hearing in the absence of Lopez-Cruz's retained counsel violated his right to due process. (Doc. # 8 at 5). Lopez-Cruz had retained counsel to represent him at the bond hearing. (*Id.* at 1). However, the bond hearing occurred without notice before Lopez-Cruz's retained counsel had appeared in the case. (*Id.* at 5). When IJ Johnson noted that there was no attorney listed in the Immigration Court's system, Lopez-Cruz responded that he had retained counsel. (Doc. # 8-1 ¶ 4). Nevertheless, IJ Johnson repeated his observation that no attorney appeared in the system and proceeded with the bond hearing. (*Id.* ¶¶ 4-8). Again, the Federal Respondents do not dispute these facts. (*See generally* Doc. # 10).

Under these circumstances, the Court finds that Lopez-Cruz did not receive a constitutionally adequate bond hearing and, as a result, the Federal Respondents failed to comply with the Court's Order (Doc. # 5). Lopez-Cruz had a right—both under the Fifth Amendment and the INA—to have his retained counsel present at the hearing. *See Mendoza-Garcia*, 918 F.3d at 504-05; *Al-Saka*, 904 F.3d at 434. Noncitizens may voluntarily waive this right and elect to proceed *pro se*. *Nsue-Bisa v. Ashcroft*, 98 F. App'x 436, 438 (6th Cir. 2004). However, the record is devoid of any evidence that Lopez-Cruz made such a waiver. On the contrary, Lopez-Cruz alleges that the IJ did not "obtain a knowing and voluntary waiver" and that he affirmatively informed the IJ that he was represented by counsel. (Doc. # 11 at 5). Other courts, evaluating similar factual scenarios, have held that proceeding with a hearing despite a noncitizen's statement that he had retained outside counsel violates the noncitizen's right to due process. *See*

13

*Addemys N.R. v. Warden of the California City Detention Facility*, No. 1:26-cv-3892, 2026 WL 2206243, at *4 (E.D. Cal. July 30, 2026) (collecting cases).

This violation certainly prejudiced Lopez-Cruz's ability to effectively argue his case for release on bond pending his removal proceedings. Lopez-Cruz argues that his retained counsel would have presented evidence and argument related to a previous traffic offense. (Doc. # 11 at 10). In his written Order denying bond, the IJ highlighted this offense as grounds for denial. (Doc. # 6-1 at 1 ("The Court finds that [Lopez-Cruz] is a danger based on [Lopez-Cruz's] March 31, 2026 [arrest] for operating without ever receiving a license.")). "Had [Lopez-Cruz's] counsel 'been present at his bond hearing,' [Lopez-Cruz] could have 'better presented evidence' and 'would not have had to answer the IJ's questions 'without any idea of their legal significance.'" *Addemys N.R.,* 2026 WL 2206243, at *3 (quoting *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 809 (9th Cir. 2007)). Thus, the Court concludes that Lopez-Cruz was prejudiced by the Federal Respondents' noncompliance with the Court's Order (Doc. # 5). *See McKitrick v. Jeffreys*, 255 F. App'x 74, 76 (6th Cir. 2007) (holding that where a petitioner alleges noncompliance with a district court's habeas order, the court must "evaluate the prejudice to the petitioner by any noncompliance") (citation omitted).

**D.     Remedy**

Lopez-Cruz argues that this Court should enforce its prior Order (Doc. # 5) by directing Lopez-Cruz's immediate release. (Doc. # 8 at 2). Alternatively, Lopez-Cruz suggests that the Court should vacate the IJ's bond determination and order a new hearing that complies with the Court's prior Order. (*Id.*). Because the Federal Respondents argue that they complied with the Court's Order and that the Court lacks

14

jurisdiction to consider Lopez-Cruz's Motion under 8 U.S.C. § 1226(e), they take no position on the issue.  (*See* Doc. # 10 at 5).  "In habeas (as most elsewhere) remedies must be tailored to the wrongs they seek to redress."  *United States v. Bergman*, 746 F.3d 1128, 1133 (10th Cir. 2014) (Gorsuch, J.).   Neither party disputes the Federal Respondents' authority to detain Lopez-Cruz under pending removal proceedings.  The only question is whether he should be released on bond.  Thus, although Lopez-Cruz requests immediate release, the Court is not persuaded that release would be an appropriately tailored remedy under these circumstances.[5]

## III.    CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that

(1)    Petitioner Carlos Alberto Lopez-Cruz's Motion to Enforce (Doc. # 8) is **GRANTED IN PART** and **DENIED IN PART**.

(2)    Respondents are **ORDERED** to **immediately release** Lopez-Cruz or provide him with a **constitutionally adequate bond hearing at which the government bears the burden of proof by clear and convincing**

---

[5]    The Court acknowledges Lopez-Cruz's argument that the Federal Respondents' failure to precisely comply with this Court's prior Order necessitates his immediate release.  (*See* Doc. # 11 at 12 (citing *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th Cir. 2006); *Smith v. Davis*, No. 25-3383, 2026 WL 1601830, at *2 (6th Cir. June 4, 2026))).  However, Lopez-Cruz relies on authority pertaining to conditional writs of habeas corpus granted under 8 U.S.C. § 2254 concerning the legality of a state conviction.  *See Satterlee*, 453 F.3d at 364; *Smith*, 2026 WL 1601830, at *1.  He cites no authority for the proposition that, in the context of a petition under § 2241 challenging the lack or insufficiency of a bond hearing in removal proceedings, immediate release is required.  And district courts facing similar motions to enforce have held otherwise. *See, e.g., Gill v. Mullin*, No. 4:26-cv-523, 2026 WL 1215055 (N.D. Ohio May 4, 2026) (granting in part a motion to enforce habeas petition and requiring a second bond hearing under § 1226(a) that comports with due process); *Addemys*, 2026 WL 2206243, at *5 (same); *Mancia v. Bondi*, No. CV-26-1392-PHX-DWL, 2026 WL 1085090, at *3 (D. Ariz. Apr. 22, 2026) (same). Accordingly, the Court will order a second bond hearing under § 1226(a).

**evidence** under 8 U.S.C. § 1226(a) within **fourteen (14) days of the date of this Order**.

(a)    The Federal Respondents **must notify Lopez-Cruz <u>and</u> his counsel of record in this case, and counsel of record active in the proceedings before the Immigration Court** of the time, date, and place of the bond hearing **at least seventy-two (72) hours in advance** of the hearing.

(3)    Respondents shall file a Status Report with this Court **on or before August 27, 2026** to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 6th day of August, 2026.



Signed By:

<u>David L. Bunning</u>

Chief United States District Judge